IN THE SUPREME COURT OF MISSISSIPPI
NO. 94-DP-01210-SCT

*RONNIE LEE CONNER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/27/90 |
| TRIAL JUDGE: | HON. ROBERT BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ANDRE DEGRUY |
| | JAMES W. CRAIG |
| | JULIE ANN EPPS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | AFFIRMED - 6/13/96 |
| MOTION FOR REHEARING FILED: | 7/3/96 |
| MANDATE ISSUED: | 9/26/96 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

## ON APPLICATION FOR LEAVE TO FILE MOTION TO VACATE

## CONVICTION AND/OR DEATH SENTENCE

¶1. Ronnie Lee Conner was convicted of capital murder for the kidnap, robbery and murder of an elderly woman, Celeste Brown, by a jury of the Lauderdale County Circuit Court. His conviction and death sentence were affirmed by this Court in *Conner v. State*, 632 So. 2d 1239 (Miss. 1993), *cert. denied*, *Conner v. Mississippi*, 115 S.Ct. 314 (Miss. 1994). We now deny Conner's motion for post-conviction relief.

### STATEMENT OF THE CASE

¶2. Conner filed his Motion to Vacate Conviction and/or Death Sentence pursuant to Miss. Code Ann. § 99-39-7 (1994), the Mississippi Uniform Post-Conviction Collateral Relief Act, in the Lauderdale County

Circuit Court on December 2, 1994. By an order of this Court dated December 5, 1994, Conner's December 7, 1994 execution date was postponed pending the outcome of his Application for Leave to File Motion to Vacate Judgment and Death Sentence, Motion to Vacate Judgment and Death Sentence, and Memorandum in Support Thereof.

¶3. In support of his motion, Conner now asserts:

I. Conner's Right to Effective Assistance of Counsel at the Sentencing Phase was violated by his Attorney's Failure to Investigate, Prepare and Present Compelling Mitigation Evidence;

II. Because His Counsel Was Ineffective in Failing to Object to the Prosecutor's Use of the Peremptory Challenges in a Racially Discriminatory Manner, Conner Is Entitled to an Evidentiary Hearing on the Question of Whether the Prosecutor's Use of Peremptory Challenges to Exclude Blacks from Conner's Trial Jury Was Race-Neutral;

III. Conner Was Deprived of His Right to Effective Assistance of Counsel and Due Process of Law by Trial Counsel's Inadequate Voir Dire of Prospective Jurors;

IV. Trial Counsel's Failure to Object and Otherwise Preserve Reversible Error Constitutes Ineffective Assistance of Counsel under *Strickland*;

V. This Court's Refusal to Vacate Conner's Death Sentence after *Willie v. State* Established the Proper Statutory Use of the "Robbery" and "Pecuniary Gain" Aggravating Factors Deprived Conner of Meaningful Appellate Review.

¶4. Conner also filed a motion to proceed in forma pauperis. The State was granted a thirty-day extension of time in which to respond, but no response was received. Conner's motion to proceed in forma pauperis is denied.

## ARGUMENTS AND DISCUSSION OF LAW

¶**5.** The first four issues Conner raises challenge the effectiveness at trial of his appointed attorney. To succeed on these claims, he must satisfy the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted by this Court in *Stringer v. State*, 454 So. 2d 468 (Miss. 1984). Conner bears the burden of showing (1) that counsel's performance was deficient, and (2) that his defense was prejudiced by the deficient performance. *Roland v. State*, 666 So. 2d 747, 750 (Miss. 1995); *McQuarter v. State*, 574 So. 2d 585, 687 (Miss. 1990); *Stringer v. State*, 454 So. 2d at 476. Moreover, Conner must show that but for counsel's errors, the outcome of his case would have been different. *Nicolaou v. State*, 612 So. 2d 1080, 1086 (Miss. 1992); *Ahmad v. State*, 603 So. 2d 843, 848 (Miss. 1992). He faces "a strong but rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance." *Moody v. State*, 644 So. 2d 451, 456 (Miss. 1994).

¶6. On review, we look with deference upon counsel's performance, considering the totality of the circumstances to determine whether it was both deficient and prejudicial. *Moody*, 644 So. 2d at 456; *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988). If the petitioner raises questions of fact regarding counsel's deficiencies or any prejudice resulting therefrom, he is entitled to an evidentiary hearing. *Moody,* 644 So. 2d at 456; *Alexander v. State,* 605 So. 2d 1170, 1173 (Miss. 1992). When we find that

counsel's performance was ineffective, the case will be remanded for a new trial. *Moody*, 644 So. 2d at 456.

## I. Counsel's Failure to Investigate and Present Mitigating Evidence

¶7. Conner first asserts that his attorney was deficient in failing to develop and present evidence of his mental illness during the sentencing phase of his trial. He contends that expert testimony that he was schizophrenic with a history of psychotic episodes and not taking his medication at the time Celeste Brown was murdered would have entitled him to instruct the jury to consider two additional mitigating factors pursuant to Miss. Code Ann. § 99-19-101(6) when determining his sentence: that the offense was committed while under the influence of extreme mental or emotional disturbance; and, that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. The State counters that Conner's attorney did not shirk his duty to investigate his mental health, especially in light of the evaluation made in response to Conner's motion for a mental examination.

¶8. The issue of Conner's mental health and low intelligence level arose in several contexts throughout the course of his trial, as well as on direct appeal. Conner raised the matter in charging that the circuit court erred in not ordering a competency hearing; that his sentence was disproportionate; that important mitigating evidence was excluded; and that the circuit court erred in denying his motion to compel disclosure of information regarding both aggravating and mitigating circumstances. *Conner*, 632 So. 2d at 1247-51, 1265, 1267, 1275. Conner was evaluated at Whitfield State Hospital in March, 1990 by order of the circuit court. In relevant part, the evaluation stated that:

> The staff was unanimous in the opinion that he is competent to stand trial at the present time. He appears to have a rational as well as factual understanding of the charges against him and he appears capable of assisting his attorney in preparing a defense. With regard to his sanity at the time of the crime, the staff was unanimous in the opinion that he knew the difference between right and wrong in relation to his actions.

> Mr. Conner has been treated at the [Weems] Mental Health Center for a number of years and has a Schizophrenic diagnosis. We have retained this diagnosis, although he has shown few if any of the symptoms of this disorder during his stay in the hospital. He is on medication and this could account for the lack of symptoms. We have given him a diagnosis of Personality Disorder Not Otherwise Specified to reflect a long-standing pattern of social discomfort, excessive dependency, and a tendency to take out his anger in indirect and passive ways.

*Conner*, 632 So. 2d at 1251.

¶9. Conner relies primarily on *Woodward v. State,* 635 So. 2d 805 (Miss. 1993) to support his assertion that his attorney's alleged failure to investigate and present evidence of his mental illness constitutes ineffective assistance of counsel. In *Woodward*, as distinguished from the case *sub judice*, the attorney presented Woodward's mental illness as the **sole** mitigating factor. *Woodward*, 635 So. 2d at 810. The defense's sole witness throughout the case, who, in his affidavit, indicated that Woodward suffered from a severe psychotic disorder at the time of the crime, was questioned by Woodward's attorney only as to the results of his testing and not about the history or details of Woodward's illness. Noting the attorneys' ineptitude, the Court noted:

By not realizing that they could offer Dr. Thurman's testimony about the [sic] Woodward's mental illness without opening the door to unlimited character evidence, Woodward's trial counsel were ineffective. **Having made a tactical decision to rely solely on mental illness as a mitigating factor, counsels' failure to offer all of the evidence they had was inexcusable.**

*Woodward*, 635 So. 2d at 810. Similarly, in ***Lloyd v. Smith***, 899 F.2d 1416 (5th Cir. 1990), a *habeas* action upon which Conner also relies, the ineffectiveness of counsel issue arose from the petitioner's attorney's ignorance of the law. The Fifth Circuit stated that:

The district court wholly failed to address the state court's implicit finding that **the failure to properly investigate stemmed, at least in part, from Hackman's ignorance as to the admissibility of statutory mitigating evidence of mental disease or defect which did not reach the level of insanity under the McNaughten rule.** Had Hackman understood the relevance of mitigating evidence, an attempt to develop such testimony could have begun at an earlier stage.

*Lloyd*, 899 F.2d at 1425. The court further noted that the district court was correct in stating that Lloyd's attorney had no duty to find an expert who would testify as he wished, but found such a statement to be incongruous in light of the fact that "at least one of Lloyd's attorneys was wholly unaware of the admissibility of statutory mitigating circumstances, such as mental disease or defect not rising to the level of insanity." *Id*.

¶10. As distinguished from *Lloyd* and *Woodward*, there is no indication that Conner's attorney acted in ignorance of the law when he failed to call any mental health professionals as witnesses. Based on the evaluation from Whitfield, *supra*, it hardly seems that further evidence of Conner's alleged personality disorders was necessary. Further, the affidavits of the experts Conner now claims should have been called to testify do little more than establish that he once had been diagnosed as schizophrenic, apparently failed to take his medication on a regular basis and had a history of substance abuse.

¶11. With the benefit of hindsight, Conner's attorney concedes that, believing his client to be innocent, he devoted all of his energies to the guilt phase of the trial and did not contact any mental health professionals in preparation for the sentencing phase. By the time he realized that evidence of mental illness might be the only hope for reducing Conner's sentence, he was unable to secure the necessary expert witnesses. While it might be tempting to argue that Conner was prejudiced by his attorney's lack of foresight, Conner fails to show that but for the presentation of evidence of his alleged mental illness, the outcome of his trial might have been different. ***See Billiot v. State***, 655 So. 2d 1, 17-18 (Miss. 1995)(rejecting argument that death row inmate suffering from paranoid schizophrenia is not competent to be executed).

## II. Counsel's Failure to Object to Prosecutor's Use of Peremptory Challenges

¶12. On direct appeal, Conner complained that the State exercised its peremptory challenges against five women, three of whom were black. We refused to address the issue because Conner raised no objections to those challenges at trial. ***Conner v. State***, 632 So. 2d 1239, 1264 (Miss. 1993). Conner now contends that counsel was ineffective in failing to object to the State's peremptory challenges.

¶13. At least two of the jurors seated were black, as was one of the alternates, and five of the jurors, as well as both alternates, were female. The State asserts that since it only used five of its twelve peremptory challenges, had it sought to strike blacks from the jury, it had sufficient strikes remaining to do so.

¶14. For counsel's performance to be deemed ineffective, Conner must demonstrate that his case was prejudiced by the failure to raise any challenges pursuant to **Batson v. Kentucky,** 476 U.S. 79 (1986). To establish that he was prejudiced, Conner must show:

> [H]e is member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

**Batson,** 476 U.S. at 96 (citations omitted). Conner makes no attempt to demonstrate that the State exercised its peremptory challenges in a racially-discriminatory manner. Our reading of the record indicates that the peremptory challenges all were made for race-neutral reasons.

¶15. We likewise reject Conner's reliance on **Ex parte Yelder**, 575 So. 2d 137, 139 (Ala. 1991), where the Alabama Supreme Court held that "the failure of trial counsel to make a timely **Batson** objection to a prima facie case of purposeful discrimination by the State in the jury selection process through its use of peremptory challenges is presumptively prejudicial to a defendant." As distinguished from the case *sub judice*, where the State exercised two or three of its peremptory challenges against blacks, the State, in **Yelder**, had used its peremptory challenges to strike seventeen of eighteen black jurors, without any objection by Yelder's attorney. *Id*. at 137. There being no *prima facie* case of purposeful discrimination, Conner's attorney's failure to object to the State's peremptory challenges can hardly be said to be presumptively prejudicial.

### III. Counsel's Inadequate Voir Dire of Jurors

¶16. Conner next contends that counsel's voir dire of the jury was inadequate; to wit, although voir dire covered fifty-three pages of the transcript, his attorney's questioning fills only three pages. The circuit court and the prosecution thoroughly questioned the jury on all matters, particularly with regard to its scruples about the death penalty. Conner's attorney then queried prospective jurors about any prejudices they might harbor against a black man accused of murdering an elderly white woman; whether they could consider the case objectively without being swept away by the emotional impact of the crime committed; and if they could listen to both sides of the case with an open mind.

¶17. Conner relies on **Moody v. State**, 644 So. 2d 451 (Miss. 1994) for the proposition that counsel's failure to conduct a lengthy voir dire renders his assistance ineffective. In contrast to the case *sub judice*, where Conner's attorney asked questions which supplemented those posed by the court and the prosecution, the attorney for Moody and Garcia merely stated, " I have no voir dire for the jury." The record indicates that any additional questioning of the jurors by Conner's attorney would have been redundant. Moreover, Conner does not indicate that he was prejudiced by his attorney's failure to conduct a more extensive voir dire. Accordingly, there is no merit to this issue.

### IV. Other Deficiencies in Counsel's Performance

¶18. On direct appeal, several assignments of error were found to be waived because they were not properly preserved at trial. Conner specifically complains of his attorney's failure to request a lesser-

included offense instruction; his failure "to give meaningful closing arguments;" and his failure to object to an "inflammatory line of questioning" on cross-examination. Conner, however, has failed to show that he was prejudiced by counsel's performance.

### a. The Lesser-Included Offense Instruction

¶19. Conner first asserts that counsel should have requested a lesser-included offense instruction on simple murder. In ***Conner,*** we found that the evidence in the record did not support a lesser-included offense instruction since "[t]he evidence of the three component crimes in the capital murder charge are so intertwined as to be virtually inseparable." ***Conner***, 632 So. 2d at 1255. ***See Mackbee v. State***, 575 So. 2d 16, 23 (Miss. 1990)(lesser-included offense instruction required only "where a juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt"). As we further found, any error in failing to give a lesser-included offense instruction was cured by the inclusion of an instruction requiring the jury to find Conner guilty beyond a reasonable doubt of every element of the capital crime with which he was charged. ***Id***. at 1255. Since the evidence did not support a lesser-included offense instruction, Conner cannot show that he was prejudiced.

### b. Closing Arguments

¶20. Conner next contends that his attorney failed to object to the time limits placed on closing arguments by the circuit court and as a result, did not even have time to summarize the evidence. He was allotted forty-five minutes for the guilt phase and fifteen minutes for the sentencing phase. ***Conner***, 632 So. 2d at 1276. His attorney made no proffer of what would have been said, provided no indication that the time allotted was inadequate and made no mention of the issue in his motion for a new trial. ***Id.***

¶21. The length of time allotted for closing arguments is within the discretion of the trial court. ***Conner***, 632 So. 2d at 1275-1276. ***Willie v. State***, 585 So. 2d 660, 676 (Miss. 1991). Moreover, Conner fails to suggest how a lengthier closing argument might have changed the outcome of his case. Therefore, this argument likewise affords him no relief.

### c. Failure to Object to "Inflammatory" Cross-Examination

¶22. On direct appeal, Conner asserted that the circuit court erred in allowing cross-examination during the penalty phase of the trial about whether he had ever been convicted for displaying a weapon. Without more, he now asserts that "[t]his Court should now reach the ***Hosford*** [***v. State***, 525 So. 2d 789 (Miss. 1988)] issue or, at the very least, remand this case to the circuit court for an evidentiary hearing." This is the sum, substance and total content of his assertion. Absent any meaningful argument, this Court is not obligated to entertain an assignment of error. ***Baine v. State***, 604 So. 2d 249, 255 (Miss. 1992).

### V. Prospective Application of *Willie v. State*

¶23. In his final assignment of error, Conner contends that this Court violated the principle of meaningful appellate review by applying prospectively the finding of ***Willie v. State***, 585 So. 2d 660, 661 (Miss. 1991) that a jury could not be instructed on both robbery and pecuniary gain as separate aggravating circumstances. On direct appeal, Conner had argued that the circuit court erred in allowing as separate aggravating factors robbery as well as pecuniary gain as a motive, asserting that the pecuniary gain aggravator was vague and overbroad. Miss. Code Ann. § 99-39-21(3)(1994) provides that the doctrine of *res judicata* applies to petitions for post-conviction relief. Section 99-39-21(2) further provides that:

The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this chapter upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

Thus, issues raised and decided on direct appeal cannot be raised again under the Post-Conviction Relief Act using a different legal theory. *Wiley v. State*, 517 So. 2d 1373, 1377 (Miss. 1987); *Mann v. State*, 490 So. 2d 910 (Miss. 1986). Accordingly, this issue is procedurally barred.

## CONCLUSIONS

¶24. Conner fails to show that he was prejudiced by his attorney's performance or that but for the inadequacies alleged, the outcome of the trial might have been different. Accordingly, we deny his motion for post-conviction relief.

¶25. **CONNER'S APPLICATION FOR LEAVE TO FILE MOTION TO VACATE CONVICTION AND/OR DEATH SENTENCE DENIED.**

**LEE, C.J., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER AND SULLIVAN, P.JJ.**

**BANKS, JUSTICE, DISSENTING:**

¶26. Because I believe that Conner should have an opportunity to present his case to the trial court on the question whether counsel rendered ineffective assistance with respect to the presentation of mitigation evidence concerning Conner's mental state, I dissent.

¶27. In the absence of an evidentiary hearing, this Court is ill equipped to assess a claim based upon what was available and not presented during the trial of a case and whether the failure to have presented it rises to the level of ineffective assistance. What we know is that Conner has been diagnosed as suffering from schizophrenia. We also know that he failed to present any medical testimony at trial. Counsel confesses that his failure to further investigate and present evidence on this issue was due to his neglect of sentencing issues in favor of concentrating on guilt issues. The extent of that neglect and the reasonableness of the choice of priorities is a matter which should be assessed in the first instance by the trial court. I would grant the petition to seek post-conviction relief in the trial court. *See Woodward v. State*, 635 So. 2d 805 (Miss. 1993); *Loyd v. Smith*, 899 F. 2d 1416 (5th Cir. 1990); *Wilson v. Butler*, 813 F. 2d 664, 671 (5th Cir. 1987); *Jones v. Thigpen*, 788 F. 2d 1101 (5th Cir. 1986).

**PRATHER AND SULLIVAN, P.JJ., JOIN THIS OPINION.**